UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NATHANIEL D. DEBOLES and MARY DEBOLES,<br><br>          Plaintiffs,<br><br>v.<br><br>THE NATIONAL RAILROAD PASSENGER CORPORATION dba AMTRAK, et al.,<br><br>          Defendants | 2:11-CV-276 JCM (CWH) |

**ORDER**

Presently before the court is defendant National Railroad Passenger Corporation d/b/a Amtrak's ("Amtrak") motion for summary judgment. (Doc. # 90). Plaintiffs Nathaniel and Mary Deboles filed a response in opposition (doc. # 94), and Amtrak filed a reply (doc. # 99).

Also before the court is defendant BNSF Railway Company's ("BNSF") motion for summary judgment. (Doc. # 91). Plaintiffs filed a response in opposition (doc. # 95), and BNSF filed a reply (doc. # 98).

**I.    Background**

In the instant action, plaintiffs seek to recover damages based on injuries sustained by plaintiff Nathaniel Deboles when he was hit by an Amtrak passenger train.

On December 9, 2008, plaintiff Nathaniel Deboles was in the midst of a road trip from Las Vegas, Nevada to Arkansas. Early in the morning, Mr. Deboles encountered heavy snow and found

**James C. Mahan**
**U.S. District Judge**

himself stuck in unusually bad traffic on a desolate stretch of Highway 122 in New Mexico. After waiting for two hours at a near standstill, Mr. Deboles exited his car and sought privacy in order to urinate. Mr. Deboles walked away from the road, across two sets of train tracks to a snow-covered embankment thirty to forty yards to the north. After relieving himself, he began to walk back toward his car. As he walked back, he was forced to stop and wait for a freight train that was passing by on the southern track. While waiting for the train to pass, he stood within five feet of the northern track.

Unbeknownst to Mr. Deboles, an Amtrak passenger train was quickly barreling toward him at eighty-six miles-per-hour on the northern track. The engineers of this train have since stated that Mr. Deboles suddenly "appeared on the north side" of the track, at which time they blew the train's horn and applied the brakes. Despite these efforts, Mr. Deboles remained unaware of the impending danger and was struck by the train. As a result, Mr. Deboles' left hand was severed and he suffered a stroke, causing him permanent cognitive impairments.

The evidence on the record demonstrates that no more than ten seconds elapsed between the time the engineers first saw Mr. Deboles and the impact. The engineers, upon first seeing something near the tracks, thought it was an animal or a flock of birds. The train's emergency brakes were not activated until after the impact. Notably, there is no evidence that any other train accidents have ever taken place in the remote location where this incident occurred. This site is several miles from any developments or houses.

Plaintiffs put forward four claims in this matter. First, Mr. Deboles asserts a claim for premises liability against Amtrak based on the conduct of the engineers. Second, he argues that BNSF, the owner of the tracks, should be held liable based on the conduct of Amtrak's employees and for failing to place fences and post warnings about the danger of oncoming trains. In the final two causes of action, Mrs. Deboles brings claims for loss of household services and loss of spousal consortium against both defendants. The court will address each of these claims in turn.

II.   **Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  show that "there is no genuine issue as to any material fact and that the movant is entitled to a
2  judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to
3  isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24
4  (1986).

5  In determining summary judgment, a court applies a burden-shifting analysis. "When the
6  party moving for summary judgment would bear the burden of proof at trial, it must come forward
7  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.
8  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue
9  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213
10 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

11  In contrast, when the nonmoving party bears the burden of proving the claim or defense,
12  the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
13  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to
14  make a showing sufficient to establish an element essential to that party's case on which that party
15  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails
16  to meet its initial burden, summary judgment must be denied and the court need not consider the
17  nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

18  If the moving party satisfies its initial burden, the burden then shifts to the opposing party
19  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith
20  Radio Corp.*, 475 U.S. 574, 586 (1986). To demonstrate the existence of a factual dispute, the
21  opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that
22  "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
23  versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,
24  631 (9th Cir. 1987).

25  In other words, the nonmoving party cannot avoid summary judgment by relying solely on
26  conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045
27  (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
28

**James C. Mahan
U.S. District Judge**

- 3 -

1  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
2  for trial. *See Celotex Corp.*, 477 U.S. at 324.

3  At summary judgment, a court's function is not to weigh the evidence and determine the
4  truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,
5  477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable
6  inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is
7  merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at
8  249–50.

9  **III. Analysis**

10  As an initial matter, the court has already ruled that New Mexico substantive law applies in
11  this case. (Doc. # 54). Accordingly, the court will apply relevant precedent from New Mexico courts
12  in analyzing plaintiffs' claims.

13  *a. Premises liability against Amtrak*

14  New Mexico law makes clear that landowners owe a lesser duty to "trespassers" than they
15  do to "invitees" or "licensees." *Ford v. Bd. of County Com'rs of County of Dona Ana*, 879 P.2d 766,
16  769 (N.M. 1994). In this case, plaintiffs do not dispute that Mr. Deboles was a trespasser on the
17  railroad tracks, as he was present without the permission of BNSF. (Doc. # 94 p. 7).

18  In New Mexico, landowners are generally "not liable to trespassers for physical harm caused
19  by failure[s] to exercise reasonable care (a) to put the land in a condition reasonably safe for their
20  reception or (b) to carry on . . . activities so as not to endanger them." *Savinsky v. Bromley Group,*
21  *Ltd.*, 740 P.2d 1159, 1162 (N.M. Ct. App. 1987). Indeed, it is well established under New Mexico
22  law that a landowner's liability to a trespasser is limited to injuries sustained as a result of the
23  defendant's "willful or wanton conduct." *Maldonado v. United States*, 893 F.2d 267, 270 (10th Cir.
24  1990) (*citing Chavez v. Torlina*, 99 P. 690 (N.M. 1909)).

25  "Willful conduct" is defined as "the intentional doing of an act with knowledge that harm
26  may result." *Pub. Serv. Co. of New Mexico v. Diamond D Const. Co.*, 33 P.3d 651, 668 (N.M. Ct.
27  App. 2001). "Wanton conduct" is defined as "the doing of an act with utter indifference to or
28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1  conscious disregard for a person's rights [or] safety." *Id*.

2        Plaintiffs fail to present evidence demonstrating that the Amtrak engineers willfully or wantonly caused injury to Mr. Deboles. Quite the contrary, the evidence on the record demonstrates that the engineers took quick action to alert Mr. Deboles to the presence of the oncoming train. It is undisputed by plaintiffs that the engineers activated the train's horn at least 4.3 seconds prior to the impact. Furthermore, the engineers testified that they instinctively activated the train's normal braking system upon seeing Mr. Deboles on the tracks. This sequence of events clearly shows that the Amtrak employees took quick action to avoid causing harm to Mr. Deboles.

      Plaintiffs dispute that the train's braking system was activated before the impact, and also argue that the failure to engage the train's emergency braking system sooner demonstrates that the engineers wantonly caused Mr. Deboles' injuries. As to the former point, plaintiffs have not produced any evidence to dispute the testimony of the engineers that the train's normal braking system was activated at the same time they turned on the horn. Moreover, even if plaintiff's unsupported narrative of the events were true, the mere fact that the engineers activated the horn to warn Mr. Deboles in the extremely short time span they had to react demonstrates that the injuries Mr. Deboles sustained were not the result of willful or wanton conduct.

      Accordingly, the court finds that plaintiffs have not produced evidence from which a reasonable person could conclude that the Amtrak employees willfully or wantonly caused injury to Mr. Deboles.

      Perhaps in recognition of their evidentiary shortfall, plaintiffs argue that the court should apply a heightened duty to Amtrak in this case. New Mexico courts have recognized that landowners bear a duty of "ordinary care" toward trespassers in certain instances. This heightened duty requirement applies if "(1) the landowner is engaged in activities on its land that involve an unreasonable risk of death or great bodily harm to persons coming onto the land; (2) the landowner knows or should reasonably know that there are constant intrusions by trespassers; and (3) the landowner has reason to believe that such trespassers will not realize the risk of harm involved." *Williams v. BNSF Railway Co.*, 1:10-cv-844-JCH-KBM, doc. # 266 p. 5 (D.N.M. 2012) (copy filed

**James C. Mahan**
**U.S. District Judge**

- 5 -

1  in the instant matter as doc. # 90-15) (quoting New Mexico Uniform Jury Instruction 13-1306); *see*
2  *also Latimer v. City of Clovis*, 495 P.2d 788, 794 (N.M. Ct. App. 1972).

3      The evidence on the record demonstrates that no heightened duty applies to the defendants
4  in the instant case. First, plaintiffs have been unable to show that the defendants should have known
5  that "there [were] constant intrusions by trespassers." Indeed, the record is devoid of evidence
6  showing that anyone besides Mr. Deboles has ever set foot in the vicinity of the train tracks.
7  Furthermore even if, as plaintiffs argue, Amtrak employees became aware of Mr. Deboles' presence
8  approximately ten seconds before seeing him, they had no reason to believe that he would not
9  quickly realize the risk of imminent harm when the train's horn was activated.

10      Accordingly, the court holds that Amtrak did not bear a heightened duty toward trespassers
11  in the vicinity of the accident.

12      Because plaintiffs fail to present evidence showing that Amtrak engaged in willful or wanton
13  conduct that led to Mr. Deboles' injuries, and because Amtrak did not bear a heightened
14  responsibility toward trespassers in the area, plaintiffs fail to raise a genuine issue of material fact
15  in an essential element of the first claim. Therefore, the court will grant Amtrak's motion for
16  summary judgment as to this cause of action.

17      *b. Premises liability against BNSF*

18      Plaintiffs argue that BNSF, as the owner of the railroad tracks, is liable for failing to construct
19  a fence and for not posting warning signs in the area of the accident. For the same reasons discussed
20  previously, the court finds that BNSF owed only a duty not to willfully or wantonly cause injury to
21  Mr. Deboles, rather than a heightened duty of "ordinary care."

22      In order to succeed on this claim, plaintiffs must demonstrate that BNSF chose not to place
23  a fence or warning signs with "knowledge that harm may result" or "utter indifference to or
24  conscious disregard for [Mr. Deboles'] rights [or] safety." *Pub. Serv. Co. of New Mexico v. Diamond*
25  *D Const. Co.*, 33 P.3d 651, 668 (N.M. Ct. App. 2001). However, plaintiffs fail to produce evidence
26  showing that any trespassers had set foot in the area prior to the accident. Only serving to
27  demonstrate the futility of their argument, plaintiffs point out that there is a Navajo Reservation

28

**James C. Mahan**
**U.S. District Judge**

- 6 -

located approximately five miles away. Such a large distance between the location in question and the nearest notable landmark only highlights the fact that BNSF could not have known, nor even suspected, that harm could result from its decision not to construct a fence or put up signs around these tracks.

Therefore, the court finds that plaintiffs provide no evidence of willful or wanton conduct on the part of BNSF, and will grant the motion for summary judgment as to the second cause of action.

*c. Loss of household services and loss of consortium*

Mrs. Deboles' claims for loss of household services and loss of consortium are contingent upon Mr. Deboles' entitlement to general damages for his premises liability claims. *See Archer v. Roadrunner Trucking Inc.*, 930 P.2d 1155, 1160 (N.M. 1997). Because plaintiffs have failed to raise a genuine issue of material fact as to the underlying claims, these dependant claims cannot succeed. Thus, the court will grant summary judgment in favor of defendants as to the claims for loss of household services and loss of consortium.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant National Railroad Passenger Corporation d/b/a Amtrak's motion for summary judgment (doc. # 90) be, and at the same time hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant BNSF Railway Company's motion for summary judgment (doc. # 91) is GRANTED. The clerk is instructed to enter judgment accordingly and close the case.

DATED March 28, 2014.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 7 -